UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BC DENTAL, INC.**, and **STARR INDEMNITY & LIABILITY COMPANY**

    Plaintiffs,

v.                                         Case No. 8:23-cv-00664-WFJ-LSG

**FSH MAINTENANCE, LLC,** a Florida Limited Liability Company,

    Defendant.
_____/

## ORDER

Before the Court is Plaintiffs BC Dental, Inc. ("BC Dental") and Starr Indemnity & Liability Company's ("Starr Indemnity") Motion for Summary Judgment. Dkt. 31. Defendant FSH Maintenance, LLC ("FSH") has responded in opposition. Dkt. 34. Additionally, Plaintiff BC Dental raised an *ore tenus* Motion to Strike the National Transportation Safety Board ("NTSB") Aviation Accident Final Report (Dkt. 34-1) that Defendant FSH has relied upon. *See* Dkt. 41. Upon due consideration, the Court grants Plaintiffs' motion for summary judgment as to Count I but stays Counts II and III pending the resolution of Case No.: 19-CA-9647 in Circuit Court of the 13th Judicial Circuit for Hillsborough County, Florida.

## FACTUAL BACKGROUND

The facts of this case revolve around a fatal helicopter crash on April 4, 2019. Dkt. 34 at 4; Dkt. 31 at 3. The President and Secretary of BC Dental, Dr. Brent E. Mutton ("Mutton"), owned a Robinson Helicopter, Model R44, bearing Registration No. N4046J (the "helicopter"). Dkt. 31 at 1.

On March 31, 2019, Dr. Mutton made an autorotation emergency landing in Hillsborough County, Florida, following an unexpected loss of engine power. *Id.* at 2. After successfully landing the helicopter, Dr. Mutton contacted an authorized Robinson Helicopter dealer in Sellersburg, Indiana, who referred him to Defendant FSH, an authorized Robinson repair facility. *Id.*; Dkt. 34 at 4. Dr. Mutton and FSH entered into an agreement for the service and repair of the helicopter to airworthy status. Dkt. 31 at 2; Dkt. 32-2 at 102–03. In the days leading up to the April 4 crash, the helicopter underwent repairs by FSH in the north Tampa field where Dr. Mutton had landed it. Dkt. 34 at 4. FSH communicated with Robinson and Dr. Mutton regarding the helicopter's engine problems and ordered repair parts from Robinson. Dkt. 31 at 3; Dkt. 34 at 4; Dkt. 32-2 at 96–97. Dr. Mutton formally signed and executed an FSH "Work Order" on April 4, 2019, confirming FSH's retention to service and repair the helicopter. Dkt. 32-2 at 106.

On April 4, 2019, FSH's mechanics completed the on-site work necessary to repair and restore the helicopter, and FSH pilot Bryan Messick ("Messick")

conducted an engine startup and flight test. Dkt. 31 at 3. Following the engine test, Pilot Messick began to fly the helicopter from the site in north Tampa to FSH's repair facility in Sarasota, Florida. *Id.* Trucking the helicopter to Sarasota was feasible but FSH opted to fly it. Dkt 32-1 at 51:11-53:11. During the flight to FSH's repair facility, the helicopter again experienced an engine failure and crashed in Hillsborough County, Florida. *Id.* at 3. During the crash, a part of the helicopter rotor blade hit a light pole and splintered off, hitting a nearby truck. Dkt. 1 ¶ 29. The blade killed the truck's passenger and seriously injured the driver. *Id.* ¶ 30. There is currently a pending state court action in the 13th Judicial Circuit for Hillsborough County, Florida—Case No.: 19-CA-9647 (the "state court action")—brought by the Estate of Deodat P. Gangapersaud (the decedent passenger) and Ryan Persaud (the driver) against FHS, BC Dental, Robinson Helicopter Company, HBD Industries Inc., and HBD/Thermoid Inc. Dkt. 34 at 2. FSH settled with the state court plaintiffs on or about October 22, 2022. Dkt. 34 at 3; Dkt. 34-2.

As a result of the crash, the helicopter was declared a total loss. Dkt. 31 at 3. BC Dental made a coverage claim against Starr Indemnity for the $500,000 hull loss and received a payment of $450,000 after applying the policy's $50,000 deductible. *Id.* at 4. Additionally, BC Dental alleges an uninsured, excess loss of $218,141.52. *Id.* On March 24, 2023, BC Dental and Starr Indemnity filed the instant Complaint

3

against FSH for Negligence (Count I), Common Law Indemnity (Count II), and Equitable Subrogation (Count III). *See generally* Dkt. 1.

## LEGAL STANDARD

Summary judgment is only appropriate when there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *Celotex v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e), (c). Speculation

or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The court may not weigh evidence to resolve a factual dispute; if a genuine issue of material fact is present, the court must deny summary judgment. *Hutcherson v. Progressive Corp.,* 984 F.2d 1152, 1155 (11th Cir. 1993). Likewise, the court should deny summary judgment if reasonable minds could differ on the inferences arising from undisputed facts. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992).

## DISCUSSION

Based on the review of the filings, the Court only grants Plaintiff summary judgment as to Count I. As discussed below, BC Dental is a defendant in the pending state court action. Some of the claims raised against BC Dental contain determinative questions of fact that might impact Counts II and III in the instant federal proceeding. As such, the Court stays Counts II and III.

### I. Admissibility of the NTSB Accident Report

As an initial matter, during the oral hearing on BC Dental's motion for summary judgment (Dkt. 40), Plaintiffs raised an *ore tenus* motion to strike the NTSB Accident Report (Dkt. 34-1) as statutorily barred under 49 U.S.C. § 1154(b). The statute provides:

> No part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in

5

a civil action for damages resulting from a matter mentioned in the report.

49 U.S.C. § 1154(b). The regulations define a "Board Accident Report" as "the report containing the Board's determinations, including the probable cause of an accident, issued either as a narrative report or in a computer format ('briefs' of accidents)." 49 C.F.R. 835.2. While the Eleventh Circuit has not ruled on this issue, other circuit courts have found that NTSB Accident Reports are not admissible at trial. *Jobe v. Nat'l Transportation Safety Bd.*, 1 F.4th 396, 405–06 (5th Cir. 2021); *Chiron Corp. and Perseptive Biosystems, Inc. v. Nat'l Transp. Safety Bd.,* 198 F.3d 935, 941 (D.C. Cir. 1999); *Thomas Brooks v. Burnett*, 920 F.2d 634, 639 (10th Cir. 1990); *Benna v. Reeder Flying Service Inc.*, 578 F.2d 269, 271–73 (9th Cir. 1978).

However, Defendant argues the "factual portions of the report" may be admitted. Dkt. 42 at 2 (citing *Curry v. Chevron, USA*, 779 F.2d 272, 274 (5th Cir. 1985)). The Court disagrees. While it is true that NTSB "factual accident reports" are admissible,[1] the NTSB Report before this Court is the aviation accident final report of the Agency with Agency findings, not a factual accident report of an investigator. *See* Dkt. 34-1. This distinction is critical since the language of the statute "means what it says: No part of the Board's actual report is admissible in a

---

[1] *Jobe*, 1 F.4th at 406 n.11 (5th Cir. 2021); *Protectus Alpha Nav. Co., LTD. v. N. Pac. Grain Growers, Inc.*, 767 F.2d 1379, 1385 (9th Cir. 1985). An NTSB "Factual Accident Report" is defined in the federal regulations as "the report containing the results of the investigator's investigation of the accident. The Board does not object to, and there is no statutory bar to, admission in litigation of factual accident reports." 49 C.F.R. § 835.2.

civil suit." *Chiron,* 198 F.3d at 940–41 (surveying the case law and finding that some federal courts have been improperly admitting "factual portions" of an NTSB report when "under the plain terms of the statute, NTSB reports are inadmissible in civil litigation"); *see Campbell v. Keystone Aerial Surveys, Inc.,* 138 F.3d 996, 1001 (5th Cir. 1998) ("Federal law flatly prohibits the NTSB accident report from being admitted into evidence in any suit for damages arising out of accidents investigated by the NTSB."); *Thomas Brooks*, 920 F.2d at 639; *Benna,* 578 F.2d at 271; *Escobar v. Nevada Helicopter Leasing LLC*, No. CV 13-00598 HG-WRP, 2020 WL 104672, at *3 (D. Haw. Jan. 8, 2020); *In re Paulsboro Derailment Cases*, No. 12-7468, 2015 WL 4138950, at *1 (D.N.J. July 9, 2015). Accordingly, the Court declines to consider piecemeal the NTSB Aviation Accident Final Report and strikes the entire document as statutorily barred under 49 U.S.C. § 1154(b).

## II.    Count I – Negligence

Plaintiff BC Dental asserts a negligence claim against FSH, alleging that the repair company breached its duty to take appropriate steps to properly repair the helicopter, resulting in the crash and monetary loss. Dkt. 1 at ¶¶ 35-40; Dkt. 31 at 5. Defendant FSH contends there is still a genuine dispute of material fact on whether BC Dental exercised "operational control" of the helicopter at the time of the crash. Dkt. 34 at 7–8. The Court concludes that BC Dental is entitled to summary judgment on Count I.

To state a claim for negligence, a plaintiff "must allege four elements: a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012); *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).

Here, BC Dental has satisfied its burden of proving the absence of a genuine issue of material fact as to FSH's negligence. The record shows a duty arose when Dr. Mutton contracted with the FSH to service and repair the helicopter following Dr. Mutton's emergency landing on March 21, 2019. Dkt. 32-2 at 35:2-37:11. Indeed, at the request of FSH, BC Dental signed an FSH "Work Request" for the helicopter, confirming FSH's retention of the aircraft to bring it back to airworthy status. *See* Dkt. 32-2 at 106 (showing photocopy of a signed work order with a disclaimer stating, "Authorization for work to be performed: I hereby authorize the above repair work and the materials necessary therefore and expressly authorize the operation of the aircraft herein described, for the purpose of testing and inspection").

Next, relying on its expert witness, Steve Magginetti, BC Dental contends FSH breached its duty by failing to properly diagnose and repair the helicopter. Dkt. 31 at 6. In Mr. Magginetti's affidavit, he points to the following breaches of FSH's duty: (1) breakdown of communications between FSH employees and Robinson Helicopter concerning what repairs needed to be done, (2) the choice by FSH to not bring a recovery trailer for the helicopter and instead perform maintenance in the

8

field where the emergency landing occurred, (3) the FSH mechanic's failure to use a troubleshooting checklist from the manufacturer (Robinson Helicopter), (4) the mechanic's failure to inspect the hoses in the helicopter's engine, (5) the "very short" post-repair test flights that "did not simulate the conditions or configurations of the helicopter the day Dr. Mutton experience engine failure," (6) FSH's failure to comply with 14 C.F.R. 91.407(b) & 43.9, and (7) FSH's failure to use the FAA's "Human Factors" training available to all aircraft mechanics. Dkt. 31-3 ¶¶ 26–37.

As to causation, Mr. Magginetti's affidavit affirms each one of these breaches was a "causal factor in this crash." *Id.* ¶¶ 28–29, 32, 34–37. Finally, FSH's breach of duty caused BC Dental's damages since the helicopter was a total loss. Dkt. 31-2 ¶¶ 15, 19.

Importantly, FSH has failed to provide this Court with any rebuttal evidence to contradict Mr. Magginetti's findings. *See Bailey*, 284 F.3d at 1243 (11th Cir. 2002) (noting the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment). FSH only points to a couple of statements in Dr. Mutton's deposition that suggest he still had operational control of the helicopter. Dkt. 34 at 4–5. However, upon review of Dr. Mutton's deposition, the remarks actually affirm the fact that FSH was in full operational control of the helicopter during the repair period.

9

FSH argues that when asked about flying or transporting the helicopter following the completion of repairs, Dr. Mutton testified that "'I think they were looking for me to give them a preference but I – I didn't do it.'" Dkt. 34 at 5. However, the full context of the answer reveals Dr. Mutton's "preference" was to be totally uninvolved with any repair decision. When asked if Dr. Mutton "wanted the helicopter, if fixed, to be flown or, if thought to be fixed, to be flown any particular place or trailered and transported to any particular place," he responded, "I left that up to them." Dkt. 32-2 at 23:10-15. Dr. Mutton went on to emphasize that:

> [E]very time we discussed that we were going to do this or that, trailer or not trailer, I told them that I don't care what you do. I'm not – I'm not on site, I'm not even in the state anymore, and I'll come back and get this helicopter when you guys have it fixed. . . .
>
> And it needs to be emphasized, because I think it's an important point, you're trying to tie it down, and I'm going to say it as plainly as I can, that I had no influence on to trailer or not to trailer it. I was ambivalent about it as much as I could possibly be from the get-go because I didn't want to be involved with it.

Dkt. 32-2 at 27:8-21. FSH's citation to Dr. Mutton's deposition affirms there is no genuine dispute that operational control over the helicopter (and the subsequent repairs) was firmly within FSH's hands.

Next, FSH suggests that Dr. Mutton provided FSH with "tacit approval" to fly the helicopter following the repairs. Dkt. 34 at 5, 8. This "tacit approval" allegedly stems from Dr. Mutton testifying that "there was a little bias towards flying [the helicopter] out because you don't have to disassemble and, you know, do all that

messing around . . . I did not make a move or a nod in one direction or the other, other than to acknowledge that there's a bias that way." Dkt. 32-2 at 28:4-11. FSH's citation, however, leaves out the rest of Dr. Mutton's answer where he recalls FSH telling him the repair company was "on the way out with a trailer to pick [the helicopter] up," and Dr. Mutton responded, "Sounds good to me; I'm out of here." *Id.* at 28:12-21. In other words, FSH's cite to Dr. Mutton's deposition actually directly contradicts its own argument that Dr. Mutton "tacitly approved" or provided FSH with authority to fly the helicopter. Rather, the record reveals any "tacit approval" was for FSH to move the helicopter via trailer.

Finally, FSH's references to the NTSB Accident Report's finding on the defective air intake hose to negate causation is inapposite. *See* Dkt. 34 at 2–3, 6–7. As discussed above, the Agency's analysis and probable cause findings are statutorily barred and cannot be considered on summary judgment. *See Chiron*, 198 F.3d at 940–41. Accordingly, because there is no genuine dispute of material fact as to FSH's negligence before this Court, BC Dental's motion for summary judgment as to Count I is granted.

### III.  Count II- Common Law Indemnity

Turning to Count II (common law indemnity), the Court finds summary judgment cannot be granted while the underlying state court action is pending. For the reasons discussed below, the Court stays any determination on Count II.

Under Florida law, "[a] claim for common law indemnity is one that 'shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable.'" *Florida Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc.*, 171 So. 3d 194, 196 (Fla. 5th DCA 2015) (quoting *Houdaille Indus., Inc. v. Edwards*, 374 So.2d 490, 493 (Fla. 1979)). The party seeking indemnity must plead the following three elements: "1) that he is wholly without fault; 2) that the party from whom he is seeking indemnity is at fault; and 3) that he is liable to the injured party only because he is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity." *Id.* (quoting *Fla. Farm Bureau Gen. Ins. Co. v. Ins. Co. of N. Am.*, 763 So.2d 429, 435 (Fla. 5th DCA 2000)).

Importantly, when considering the "wholly without fault" element, the Florida Supreme Court explained that courts cannot "weigh the relative fault of the parties." *Diplomat Properties Ltd. P'ship v. Tecnoglass*, LLC, 114 So. 3d 357, 360 (Fla. 4th DCA 2013) (citing *Houdaille*, 374 So.2d at 493). Rather, a court must only "look to the party seeking indemnity to determine whether he is without fault." *Id.* "If both parties are at fault, no matter how slight the fault of the party seeking indemnity, recovery for common law indemnity is precluded." *Id.*

12

Following the Court's request for supplemental briefing on Count II (Dkt. 43), Plaintiffs concede this Court cannot grant summary judgment on Count II while the underlying state court action is pending. Dkt. 44 at 4. Based on the record currently before this Court, no determination on whether BC Dental is "wholly without fault" can be made since such a determination is dependent upon the outcome of the state court action. Put simply, BC Dental's (federal court) claim for common law indemnity arises out of its potential liability in the state court action brought by the Estate of Deodat P. Gangapersaud and Ryan Persaud.

For example, in the state court action, BC Dental asserts that it will name FSH as a *Fabre* defendant,[2] which, if resolved in BC Dental's favor, affects BC Dental's (federal court) claim of common law indemnity. Moreover, the state court action seeks to hold other (state court) defendants liable, including Robinson Helicopter and HBD Industries (the manufacturer of the engine hose). If a jury finds BC Dental without fault (and only attributes fault to the other defendants), then BC Dental could proceed on Count II in federal court. Finally, a defense verdict could be rendered finding the state court plaintiffs solely at fault. Any of the above scenarios would render BC Dental "wholly without fault" in the underlying state court action. Thus,

---

[2] *See* Dkt. 44 at 3; *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993). "A 'Fabre defendant' is a nonparty defendant whom a party defendant asserts is wholly or partially responsible for the negligence alleged." *Claudio v. Regalado*, 116 So.3d 451, 454 (Fla. 2d DCA 2013) (quoting *Salazar v. Helicopter Structural & Maint., Inc.*, 986 So.2d 620, 622 n. 1 (Fla. 2d DCA 2007)).

13

the Court concludes that BC Dental's claim for common law indemnity in this case should not be addressed until such matters are resolved in the state court action.

It has long been held that a district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *In re application of Alves Braga*, 789 F. Supp. 2d 1294, 1307 (S.D. Fla. 2011) ("It is well-established that a district court has the authority to stay proceedings on its own motion or on motion of the parties.").

This Court considers "several factors when evaluating a request for a stay, including prejudice to the non-moving party, whether the requested stay would simplify and clarify the issues, and whether the potential stay would reduce the burden of litigation on the parties and on the court." *Owens-Benniefield v. Nationstar Mortg. LLC*, No. 8:17-CV-540-T-33TGW, 2017 WL 1426720, at *2 (M.D. Fla. Apr. 21, 2017) (citing *Mackiewicz v. Nationstar Mortg., LLC*, No. 6:15–cv–465–Orl–18GJK, 2015 WL 11983233, at *1 (M.D. Fla. Nov. 10, 2015)). Indeed, federal courts routinely exercise their power to stay a proceeding where a pending decision in another court would "have a substantial or controlling effect on the claims and issues

in the stayed case." *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009).[3]

Because the viability of Plaintiff's common law indemnity claim hinges on whether BC Dental will be found to be without fault in the underlying state court action, the Court finds it appropriate to stay Count II until a state court jury decides that issue. *See United Rentals, Inc. v. Mid-Continent Cas. Co.*, No. 11-80955-CIV, 2013 WL 1296313, at *3 (S.D. Fla. Mar. 26, 2013) (declining to lift a stay on the plaintiff's common law indemnity claim due to a pending state court action); *see also Suite 225, Inc. v. Lantana Ins. Ltd*, Case No. 12-80409-CIV, 2013 WL 12171122, at *1 (S.D. Fla. Jan. 29, 2013) ("A stay is particularly appropriate, and within the court's sound discretion, where the outcome of another case may substantially affect or be dispositive of the issues in a case pending before a district court.") (internal citations and quotations omitted). Not only will a stay allow the state court to resolve a potentially dispositive issue in this case, but it will also eliminate the risk of this Court and a state court jury reaching an inconsistent result on the question of BC Dental's liability in the helicopter crash. As such, the Court exercises its sound discretion and stays Count II in the interest of judicial economy and to avoid inconsistent results.

---

[3] Additionally, this Court keeps in mind the Supreme Court's decision in *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976), which allows a district court to dismiss or stay a case "when federal and state proceedings involve substantially the same parties and substantially the same issues." *Taveras v. Bank of Am., N.A.*, 89 F.4th 1279, 1286 (11th Cir. 2024).

## IV. Count III- Equitable Subrogation

Following the same rationale, the Court stays Plaintiff's equitable subrogation claim in Count III. Equitable subrogation is generally appropriate if the following five elements are met:

> (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party.

*Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So.2d 638, 646 (Fla. 1999) (citing *Fowler v. Lee*, 106 Fla. 712, 143 So. 613, 614 (1932). Where a party has discharged the debt of the original creditor, that party "stands in the shoes" of the creditor whose claim has been discharged, and he is entitled to the "rights and priorities of the original creditor." *Dade Cty. Sch. Bd.*, 731 So. 2d at 646 (citation omitted).

"The policy behind the doctrine [of equitable subrogation] is to prevent unjust enrichment by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge." *Kala Invs., Inc. v. Sklar*, 538 So.2d 909, 917 (Fla. 3d DCA 1989) (citing *E. Nat'l Bank v. Glendale Fed. Sav. & Loan Assoc.*, 508 So.2d 1323, 1324 (Fla. 3d DCA 1987)). Application of the doctrine "depends upon the facts and circumstances of each case 'having for its basis the doing of complete and perfect justice between the parties without regard

to form.'" *Id.* (quoting *Dantzler Lumber & Exp. Co. v. Columbia Cas. Co.*, 115 Fla. 541, 156 So. 116, 119 (1934)).

Here, the outcome of the underlying state court action may determine whether Plaintiffs can bring a (federal court) equitable subrogation claim against FSH. Element three requires that the "subrogee was not primarily liable for the debt." *Dade Cty. Sch. Bd.*, 731 So. 2d at 646. However, as discussed previously, there has been no final determination of BC Dental's liability in the state court action. Depending upon that outcome, Plaintiffs' equitable subrogation claim could fail. Conversely, if a jury found a different result, then Plaintiffs' (federal court) equitable subrogation claim could be bolstered.

Accordingly, at this juncture, the Court finds that Plaintiffs' claim for equitable subrogation is premature and due to be stayed. *See Mid-Continent Cas. Co. v. Old Dominion Ins. Co.*, No. 5:11-CV-367-OC-34PRL, 2012 WL 13098716, at *7 (M.D. Fla. Sept. 21, 2012) (staying the plaintiff's equitable subrogation claim as "premature" due to an underlying state court case that will determine whether the subrogation claim accrues).

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Plaintiffs BC Dental and Starr Indemnity's Motion for Summary Judgment, Dkt. 31, is **GRANTED in part**. The Court **grants** summary judgment on

17

Count I (Negligence). The parties will submit a draft Judgment on Count I to reflect this ruling.

2. The Court **STAYS** Count II (Common Law Indemnity) and Count III (Equitable Subrogation) pending resolution of Case No.: 19-CA-9647 in Circuit Court of the 13th Judicial Circuit for Hillsborough County, Florida. The parties must file a status update with this Court within 30 days of the disposition of the state court action.

3. Plaintiffs BC Dental and Starr Indemnity's *Ore Tenus* Motion to Strike the NTSB Aviation Accident Final Report in its entirety is **GRANTED.**

**DONE AND ORDERED** in Tampa, Florida, on December 20, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record